

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

JOHN RODGERS BURNLEY,

    Plaintiff,

v.

Civil Action No. 3:18-cv-404

ALFRED DURHAM, et al.,

    Defendants.

## MEMORANDUM OPINION

This is a civil rights action brought by *pro se* plaintiff John Rodgers Burnley ("Burnley") against former Richmond Police Chief Alfred Durham ("Chief Durham");[1] "[u]nknown [n]amed [p]olice [o]fficers [f]or [t]he City of Richmond" (the "Unknown Officers"); the City of Richmond Police Department (the "RPD"); the City of Richmond (the "City"); Darsetta M. Coleman ("Coleman"), Burnley's neighbor; "COMCAST," meaning Comcast Cable Communications LLC

---

[1] Chief Durham resigned on December 31, 2018. William Smith is now the Richmond Police Chief. But, the action can continue against William Smith in his official capacity under Fed. R. Civ. P. 25(d), which says, "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Further, Burnley sued Chief Durham in his personal capacity as well, so his resignation does not affect Burnley's claims against him as a person. See Hafer v. Melo, 502 U.S. 21, 27 (1991) ("[O]fficers sued in their personal capacity come to court as individuals.").

("Comcast"); "Verizon," meaning Verizon Virginia LLC ("Verizon");[2] and Keith Brown, a Verizon technician. See Compl. (ECF No. 4) at p. 2. Burnley alleges myriad violations under 42 U.S.C. § 1983 and 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991. The case is currently before the Court on the defendants' various motions to dismiss. See DEFENDANTS ALFRED DURHAM, RICHMOND POLICE DEPARTMENT AND CITY OF RICHMOND'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF No. 11); DEFENDANT COMCAST CABLE COMMUNICATIONS, LLC'S MOTION TO DISMISS (ECF No. 15); DEFENDANT DARSETTA COLEMAN'S MOTION TO DISMISS (ECF No. 22).[3]

The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons discussed below, the Court finds that

---

[2] Burnley named only "Verizon" in the Complaint. But "Verizon" is not a legal entity, and, according to a search completed on the Virginia Secretary of State's website, there are around 200 legal entities with "Verizon" in the name. As stated in VERIZON VIRGINIA LLC'S OPPOSITION TO BURNLEY'S MOTION FOR JUDGMENT BY DEMAND AND MOTION FOR JUDGMENT BY DEFAULT; OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE LATE RESPONSIVE PLEADINGS (ECF No. 41), Keith Brown is employed by Verizon Virginia LLC, which is the party that Burnley should have sued. Because Verizon Virginia LLC voluntarily appeared in this matter, see id. at 1, all references in this opinion to "Verizon" refer to "Verizon Virginia LLC."

[3] Defendants Verizon and Keith Brown did not file motions to dismiss. As a result, Burnley twice moved for judgment against both defendants. MOTION FOR JUDGMENT BY DEFAULT (ECF No. 34); MOTION FOR JUDGMENT BY DEMAND (ECF No. 37). These motions will be denied, and the claims against Verizon and Brown will be discussed below.

2

Burnley has failed to plead an actionable claim. Thus, the case will be dismissed under Fed. R. Civ. P. 12(b)(6) with respect to Chief Durham, the RPD, the City, Comcast, and Coleman. The Court further will dismiss the claims against Verizon and Keith Brown under 28 U.S.C. § 1915(e)(2)(B), because his claims are wholly fanciful and meritless against them. Finally, the claims against the Unknown Officers will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) because Burnley fails to state a claim against the RPD or the City.

## BACKGROUND

### A. Factual Background

John Rodgers Burnley is a frequent filer of *pro se* cases against various government officials. By the Court's count, he has filed thirteen cases in this Court dating back to 1990, mostly involving civil rights claims.[4] Burnley filed a Complaint *in forma*

---

[4] Those cases are Burnley v. Norwood, 3:10-cv-264; Burnley v. United States, 3:05-cv-554; Burnley v. Stone Container Corp., 3:95-cv-642; Burnley v. United States, 3:95-cv-743; Burnley v. Murray, 3:93-cv-3; Burnley v. Click, 3:92-cv-442; Burnley v. Frank, 3:92-cv-740; Burnley v. Commanding General, 3:92-cv-748; In re Burnley, 3:91-mc-3; Burnley v. Murray, 3:91-cv-205; Burnley v. In re Estate of Will, 3:91-cv-516; Burnley v. Kennon, 3:90-cv-80; and Burnley v. Murray, 3:90-cv-306. The facts alleged in this case are strikingly similar to those alleged in Burnley v. Norwood, 3:10-cv-264, in which Burnley alleged that neighbors harassed and reported him to the RPD and that the RPD and Burnley's neighbors coordinated to spy on Burnley and to make up fake drug charges against him. See Burnley v. Norwood, No. 3:10-cv-264, 2010 WL 3063779, at *1-*3 (Aug. 4, 2010). The court granted the motions to dismiss under 12(b)(6) filed by the City, the RPD, individual RPD officers, and Burnley's neighbors, holding that Burnley failed

3

*pauperis* alleging that the defendants cooperated to spy on him through illegal wiretaps. Specifically, he alleges that Chief Durham and the RPD conducted a campaign to harass and intimidate him through using a Verizon technician named Keith Brown to wiretap Burnley's house. Compl. (ECF No. 4) ¶¶ 2-4. In Burnley's view, Chief Durham directed others to surveil the inside of Burnley's home without probable cause, using a "highly sophisticated technique," which involved Burnley's Comcast cable box sending out a "laser bean signal" that allowed police officers to look through his television sets in six rooms throughout his house. Id. ¶¶ 5-7. Burnley alleges that Brown told Burnley that Brown was making a wiretap on Burnley's phone every thirty days as Brown was directed to by Chief Durham and the RPD. Id. ¶ 10. Brown then told Burnley that the RPD "want[ed] to lock [Burnley] up so [sic] kind of bad" even though Brown told Burnley that Burnley was doing nothing illegal. Id. ¶¶ 11-12. Because Brown was sympathetic to Burnley, Burnley alleges that Brown gave Burnley his personal cell phone numbers so that Brown could keep Burnley informed as to what Chief Durham and the RPD were trying to do to arrest Burnley. Id. ¶ 14.

Burnley also alleges that he used a digital police scanner to hear what the RPD was saying about him in his home, and Burnley

---

to state a claim under 28 U.S.C. §§ 1981a, 1983, and 1985. Id. at *5-*9.

alleges that RPD officers would discuss his activities as he walked throughout his home. Id. ¶ 20. And, he argues that his neighbor, Coleman, conspired with Chief Durham and the RPD by renting her car out to the RPD so that "two (2) black female plain clothes police officers" could turn her car's high headlight beams on his home from 10:00 p.m. to 2:00 a.m. to harass Burnley, because Coleman wanted Burnley to go to jail. Id. ¶¶ 21-22.

Further, Burnley alleges that he told Chief Durham and Peter Magri of the Verizon Corporate Security Office about this issue and that no one who works for the City or Verizon helped prevent the surveillance. Id. ¶¶ 1-2, 9, 15. Burnley also says, in a conclusory manner, that Comcast had full knowledge of this surveillance program. Id. ¶ 18. Further, he alleges that these actions have caused emotional distress to he and his family. Id. ¶ 8.

Because of this alleged surveillance and harassment scheme, Burnley believes that he is entitled to roughly $2 billion. He seeks damages of $75 million from Chief Durham in his personal capacity and $150 million in his official capacity for violating the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. He also seeks $700 million from Chief Durham, the Unknown Officers, the RPD, and the City for the same violations, saying that his privacy was invaded and that he had severe mental and emotional distress due to these constitutional violations.

Burnley also seeks $600 million from Comcast, $700 million from Verizon and Keith Brown, and $75 million from Coleman for acting in concert with the City to violate his constitutional rights.

## B. Procedural Background

After Burnley filed an APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS (ECF No. 1), the Court issued an ORDER dated July 13, 2018 (ECF No. 3), in which the Court granted the application, but, in so doing, the Court cautioned that Burnley should ensure that his claims were possibly meritorious before proceeding with his case due to his history of frivolous filings. Id. Burnley filed a NOTICE OF APPEAL (ECF No. 8) on July 24, 2018, arguing that the Court had violated his due process rights and that the Court's ORDER told Burnley that he did not have "any federally protected constitutional rights under the 4th and 14th amendments." Id. On January 4, 2019, the United States Court of Appeals for the Fourth Circuit held that it lacked jurisdiction over Burnley's appeal. Fourth Circuit Opinion (ECF No. 31). The mandate was issued on January 28, 2019, giving this Court jurisdiction again. Mandate (ECF No. 33).

In the meantime, various defendants filed motions to dismiss. Defendants Chief Durham, the RPD, and the City filed a motion under Fed. R. Civ. P. 12(b)(6). See DEFENDANTS ALFRED DURHAM, RICHMOND POLICE DEPARTMENT AND CITY OF RICHMOND'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF No. 11). Comcast filed a motion to dismiss

6

under 28 U.S.C. § 1915(e)(2)(B)(i); Fed. R. Civ. P. 12(b)(6); and Fed. R. Civ. P. 12(b)(1). <u>See</u> DEFENDANT COMCAST CABLE COMMUNICATIONS, LLC'S MOTION TO DISMISS (ECF No. 15). Coleman filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). <u>See</u> DEFENDANT DARSETTA COLEMAN'S MOTION TO DISMISS (ECF No. 22). Each of those motions will be addressed below.

**DISCUSSION**

**A.    Legal Standard**

      **1.    Fed. R. Civ. P. 12(b)(1)**

A party may file a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). If a court finds that it does not have subject matter jurisdiction over the case or controversy, it must dismiss the action. <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 514 (2006). Of course, the plaintiff bears the burden of establishing that federal jurisdiction is proper by a preponderance of the evidence. <u>U.S. ex rel. Vuyyuru v. Jadhav</u>, 555 F.3d 337, 347 (4th Cir. 2009).

Challenges to subject matter jurisdiction may be made in two ways. First, a facial challenge to jurisdiction may be made by arguing that the complaint does not allege facts that permit the exercise of federal subject matter jurisdiction. <u>See</u> <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009). If that type of challenge is raised, the court must assume that all facts alleged in the complaint are true. <u>Id.</u> Second, the challenge can be made

under the theory that the complaint's assertion of subject matter jurisdiction is not true. Id. (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). In that event, a court may consider evidence outside the pleadings. Id.

## 2. Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). But the Court does not need to accept the plaintiff's legal conclusions drawn from those facts. Id. The Court can take judicial notice of matters of public record, and it can consider documents attached to the complaint and motions to dismiss "so long as they are integral to the complaint and authentic." Id.

Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (ellipsis in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a motion to dismiss under Rule 12(b)(6) does not require detailed factual allegations, but it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The complaint "must contain sufficient factual

8

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

Courts construe *pro se* complaints liberally. As the Supreme Court has instructed, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted) (internal quotation marks omitted); see also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, the Court should not, and cannot, accept as true conclusory allegations or those that are not plausible. See Twombly at 556-57.

### 3.    28 U.S.C. § 1915(e)(2)(B)(i)-(ii)

Under 28 U.S.C. § 1915(e)(2)(B), the Court shall dismiss any case filed by a *pro se* plaintiff in which the action "is frivolous or malicious" or "fails to state a claim on which relief may be granted."

Section 1915(e)(2)(B)(i) permits courts to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Claims are frivolous when they "describ[e] fantastic or delusional scenarios," Denton, 504 U.S. at 32 (quoting Neitzke, 490 U.S. at 327), or are "so nutty, delusional, or wholly fanciful as to be simply unbelievable." McLean v. United States, 566 F.3d 391, 399 (4th Cir. 2009) (internal quotation marks omitted) (quoting Gladney v. Pendleton Corr. Facility, 302 F.3d 773, 774 (7th Cir. 2002); Denton, 504 U.S. at 29).

Section 1915(e)(2)(B)(ii) allows the Court to dismiss claims based upon "an indisputably meritless legal theory." Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting Neitzke, 490 U.S. at 327). This standard is the same as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Szubielski v. Pierce, 152 F. Supp. 3d 227, 231 (D. Del. 2016); see also Simms v. Edmonds, 232 F.3d 889 (Table), at *1 (4th Cir. 2000).

B.  **Chief Durham, the RPD, and the City's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

Defendants Chief Durham, the RPD, and the City argue that Burnley has failed to state a claim. The Court agrees. Thus, DEFENDANTS ALFRED DURHAM, RICHMOND POLICE DEPARTMENT AND CITY OF

10

RICHMOND'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF No. 11) will be granted.

      1.    **Fed. R. Civ. P. 12(b)(6)**

      Burnley alleges that Chief Durham, the RPD, and the City participated in a conspiracy to deprive Burnley of his constitutional rights.[5] "To state a claim under § 1983 against a municipality for action by a subordinate governmental entity, such as [the] RPD, a plaintiff must plead 'the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [his] rights.'" Burnley v. Norwood, No. 3:10-cv-264, 2010 WL 3063779, at *5 (second alteration in original) (quoting Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994)); see also Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690 (1978). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691. "Thus, a prerequisite to municipal liability is the finding that an official policy or custom existed." Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). And, an "official policy often refers to 'formal rules

---

     [5] Burnley invokes 42 U.S.C. § 1983, but that statue does not create any cause of action. Rather, it provides a vehicle to proceed in federal court to seek redress for the violations of rights conferred by the United States Constitution or other federal law. See Albright v. Oliver, 510 U.S. 266, 271 (1994).

or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" Id. (ellipsis in original) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986)). An official policy is "contrasted with 'episodic exercises of discretion in the operational details of government.'" Id. (quoting Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987)).

And, when a defendant is not an individual or a corporation, the capacity to be sued must be determined by the law of the state. Fed. R. Civ. P. 17(b)(3). "In Virginia, an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued." Muniz v. Fairfax County Police Dep't, No. 1:05-cv-466, 2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005). The RPD has not been vested with such a capacity. Burnley v. Norwood, No. 3:10-cv-264, 2010 WL 3063779, at *5; see also Muniz, 2005 WL 1838326, at *2 ("The Fairfax County Police Department exists as a department of the government of Fairfax County." (citing Va. Code Ann. § 15.2-821 (2005)). Thus, the Court will treat all claims against the City and the RPD as against the City only. See Burnley v. Norwood, No. 3:10-cv-264, 2010 WL 3063779, at *5.

Burnley alleges, in conclusory form, that the City had a "long standing policy" of supporting police misconduct, but he does not allege any facts to support that assertion. Burnley's allegations

12

embody the exact type of conclusory allegations that the Supreme Court has said are not sufficient to sustain an action. Twombly held that a complaint requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. And, in Iqbal, it clarified that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). There is alleged no factual matter at all relating to what the City's policy was or how that policy was implemented. Instead, Burnley merely recites the elements of a claim without any factual support as to how the elements were satisfied by the City in this case. Burnley does not allege any facts that show there were "formal rules or understandings . . . [that] establish[ed] fixed plans of action to be followed under similar circumstances consistently and over time." Pembaur, 475 U.S. at 480. Instead, at most, Burnley alleges only an "episodic exercise[] of discretion in the operational details of government." Spell, 824 F.2d at 1386. He does not allege any other instances of people being harassed in a similar manner nor of any training in which officers were told to harass private citizens through a "laser beam" scheme in which they monitored those persons in their homes. Thus, his claims against the City will be dismissed.

Burnley alleges that the RPD (which is part of the City, as it cannot be sued individually) was informed by Brown of Burnley's actions inside of his house in order to try to arrest Burnley, used a "laser beam signal" to monitor his home, and would speak over a police scanner about Burnley in his home and what he was doing by using a "numbered" system to discuss the different rooms in the house. Compl. (ECF No. 4) ¶¶ 7, 10-11, 14, 20. Burnley seems to argue that this conduct showed an official policy. But, again, Burnley does not say what the RPD's policy was or how it was implemented. So, like with the claims against the City, these claims will be dismissed.

Finally, Burnley alleges that Chief Durham was advised by Burnley that he was being harassed by RPD officers, orchestrated a campaign to harass Burnley, authorized Brown to wiretap Burnley's home without probable cause, used a "laser beam signal" to spy on Burnley, and used Coleman's car nightly from 10:00 p.m. to 2:00 a.m. to shine a spotlight in Burnley's bedroom window. Compl. (ECF No. 4) ¶¶ 1-7, 10, 13-14, 18-19, 22. As with his claims against the City and the RPD, Burnley's claims against Chief Durham fail because he does not allege any facts that show there were "formal rules or understandings . . . [that] establish[ed] fixed plans of action to be followed under similar circumstances consistently and over time." Pembaur, 475 U.S. at 480. Instead, at most, Burnley alleges only an "episodic exercise[] of discretion

14

in the operational details of government." Spell, 824 F.2d at 1386. Further, the claims against Chief Durham do not fulfill the Supreme Court's plausibility standard set out in Twombly and Iqbal. There is not more than "a sheer possibility" that Chief Durham coordinated with any of these people to monitor Burnley from a building in which Brown worked that "consisted of circuits of every imaginable type and highly sophisticated computers that are used by Verizon for the sole purpose of 'intrusive hard-wire taps,'" to spy on Burnley through the use of a "laser beam signal," or to harass Burnley through coordinating with his neighbor to shine a spotlight in Burnley's bedroom window every night. Compl. (ECF No. 4) ¶¶ 1-7, 10, 13-14, 18-19, 22. The simple fact is that, no matter how generously construed, Burnley's fanciful, delusional allegations about laser beams, wiretapping, and enlisting Verizon and a neighbor to aid that effort do not pass the plausibility standards set by Twombly and Iqbal. Burnley fails to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### 2. 28 U.S.C. § 1915(e)(2)(B)(i)

Even if the Court did not dismiss the claims against the City, the RPD, and Chief Durham under Fed. R. Civ. P. 12(b)(6), the Court would do so under 28 U.S.C. § 1915(e)(2)(B)(i), because Burnley's claims "describ[e] fantastic or delusional scenarios," Denton, 504

15

U.S. at 32 (quoting Neitzke, 490 U.S. at 327), and are "so nutty, delusional, [and] wholly fanciful as to be simply unbelievable." McLean, 566 F.3d at 399 (internal quotation marks omitted) (quoting Gladney, 302 F.3d at 774; Denton, 504 U.S. at 29). At its core, Burnley's claims are that the RPD and Chief Durham targeted Burnley, using the RPD's limited time and resources to harass him for no apparent reason, by wiretapping his house, using a "laser beam signal" to monitor the inside of his home, and coordinating with his neighbor to send "two (2) black female plain clothes police officers" to harass him nightly. This alleged conspiracy exemplifies the kind of cases that federal courts are authorized to dismiss, as it is simply an unbelievable delusion. So, the claims against Chief Durham, the RPD, and the City would be dismissed on these grounds even if the Court did not dismiss the claims under Fed. R. Civ. P. 12(b)(6).[6]

    **C.  Comcast's Motion to Dismiss Under 28 U.S.C. § 1915(e)(2)(B)(i); Fed. R. Civ. P. 12(b)(6), and Fed. R. Civ. P. 12(b)(1)**

Burnley alleges that Chief Durham, the Unknown Officers, and the RPD "used a technique to 'infiitrate [sic] and reverse' a (laser beam signal) through the COMCAST cablebox network that

---

[6] Because the claims against Chief Durham, the RPD, and the City will be dismissed, the Court will also dismiss the claims against the Unknown Officers under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim, because no claim was made against them that was not made against the City or the RPD.

allowed the [RPD] to moniter [sic] the inside of plaintiff's home twenty-four (24) hours a day." Compl. (ECF No. 4) ¶ 7. He alleges that Comcast knew of the use of this system "to video the inside of plaintiff's home" and that he spoke with various Comcast employees about this issue. Id. ¶ 18-19.

Comcast argues that the claims against it should be dismissed because: (1) Burnley's Complaint is frivolous under 28 U.S.C. § 1915(e)(2)(B)(i); (2) it fails to state a claim under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii); and (3) there is no subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). DEFENDANT COMCAST CABLE COMMUNICATIONS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (ECF No. 16). The Court addresses the issue of subject matter jurisdiction first, because it relates to the Court's power to hear the case. See Arbaugh, 546 U.S. at 514.

### 1. There Is No Basis For A Motion to Dismiss Based On Lack of Subject Matter Jurisdiction

Comcast's argument for why there is no subject matter jurisdiction is essentially that the legal claim is so meritless that the Court lacks federal question jurisdiction. DEFENDANT COMCAST CABLE COMMUNICATIONS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (ECF No. 16) at 9-10. Comcast relies on one unpublished case, Whitehead v. Paramount Pictures Corp., No. 1:08-cv-792, 2009 WL 1491402 (E.D. Va. May 26, 2009), aff'd. in part

17

sub nom. Whitehead v. Paramount Pictures, Inc., 366 F. App'x 457
(4th Cir. 2010), for that argument, stating that the court
dismissed claims related to a plaintiff alleging that various media
companies stole his movie plots pursuant to Fed. R. Civ. P.
12(b)(1). However, that decision was not based on subject matter
jurisdiction and never mentions Fed. R. Civ. P. 12(b)(1); instead,
it was based on a court enforcing a pre-filing injunction against
a frequent filer.  See id. at *4 ("Plaintiff is hereby enjoined
from filing any new civil actions in the Eastern District of
Virginia and from filing any new motions, papers or requests for
relief in any civil actions currently pending in the Eastern
District of Virginia without seeking and obtaining court approval
as set forth in this Court's Order . . . ."). And, the Court finds
that Comcast is trying to turn a Fed. R. Civ. P. 12(b)(6) argument
into a Fed. R. Civ. P. 12(b)(1) argument based on the likelihood
of the factual underpinnings of the claim.     That is not an
appropriate means for a motion for lack of subject matter
jurisdiction under Fed. R. 12(b)(1).  Thus, the Court finds that
there is jurisdiction here.

   2.   The Complaint Against Comcast Will Be Dismissed Under 28
        U.S.C. § 1915(e)(2)(B)(i)

   As explained above, under 28 U.S.C. § 1915(e)(2)(B), the
Court shall dismiss any case in which the action "is frivolous or
malicious" or "fails to state a claim on which relief may be

18

granted." Section 1915(e)(2)(B)(i) permits courts to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Denton, 504 U.S. at 32 (quoting Neitzke, 490 U.S. at 327). Claims are frivolous when they "describ[e] fantastic or delusional scenarios," id. (quoting Neitzke, 490 U.S. at 327), or are "so nutty, delusional, or wholly fanciful as to be simply unbelievable." McLean, 566 F.3d at 399 (internal quotation marks omitted) (quoting Gladney, 302 F.3d at 774; Denton, 504 U.S. at 29).

On its face, Burnley's claims against Comcast do not state a cause of action. Burnley's theory of the case is that Comcast used a "laser beam signal" that allowed the RPD to infiltrate his televisions and watch him from the inside of his house. He does not allege how this technology is possible or how a cable company can monitor a person inside of his house without cameras or microphones installed inside Burnley's televisions. The technology that Burnley alleges Comcast used simply does not exist, so it is impossible that Burnley was monitored through this "laser beam signal" technology. Burnley's claim is fanciful, delusional, and unbelievable. Thus, DEFENDANT COMCAST CABLE COMMUNICATIONS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (ECF No. 16) will be granted.

**D. Coleman's Motion to Dismiss Under 12(b)(6)**

Coleman filed DEFENDANT DARSETTA COLEMAN'S MOTION TO DISMISS (ECF No. 22). The Court will grant the motion.

Burnley alleges that, "during the month [sic] of June and July of 2016[,] Ms. Coleman (acted-in-concert) with Chief Durham, the Unknown Officers, and the RPD by renting her 'personal vehicle' a Mercedes Benz . . . to Chief Durham whom (acts-under-color-of state-law) for an unlawful purpose." Compl. (ECF No. 4) ¶ 21. He then alleges that "two (2) black female plain clothes police officers" from the RPD would sit in Coleman's vehicle with high headlight beams, and Coleman "would always state in a 'very loud voice tone' . . . I will be glad when you all get [Burnley]." Id. ¶ 22 (ellipsis in original). He alleges that Coleman's conduct violated his rights by "act[ing]-in-concert" with officials under color of state law. Id. ¶ 23. "To state a claim for relief for such a conspiracy, the Complaint must sufficiently allege that defendants 'acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right.'" Burnley v. Norwood, No. 3:10-cv-264, 2010 WL 3063779, at *7 (alteration in original) (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)). A plaintiff must thus allege the deprivation of a constitutional right. Hinkle, 81 F.3d at 421.

Burnley fails to allege a constitutional deprivation here. He has no constitutionally protected right that prevents neighbors from loaning out their vehicles to other people in order to flash the headlights, nor does it prevent Coleman from loudly saying that she wished Burnley would go to jail. Burnley alleges that there were two plain clothes officers who allegedly used the car to flash the lights, but, like in Burnley v. Norwood, there is simply no plausibly pleaded basis for believing that these individuals were affiliated with the RPD. Instead, assuming this conduct happened, these individuals could have been friends of Coleman who simply wanted to annoy Burnley. Although he may have some cause of action for nuisance or some other state law claim, he does not have a claim for a constitutional violation. Thus, DEFENDANT DARSETTA COLEMAN'S MOTION TO DISMISS (ECF No. 22) will be granted.

## E.  Verizon and Brown

Burnley alleges that Brown, who is a technician for Verizon, told Burnley that he had made an initial wiretap on Burnley's home in 2011 and that those wiretaps have been reinitiated every thirty days up until sometime in 2018.  Compl. (ECF No. 4) ¶¶ 4, 10-12. Burnley says that Brown told him about a Verizon building in which Brown worked that "consisted of circuits of every imaginable type and highly sophisticated computers that are used by Verizon for the sole purpose of 'intrusive hard-wire taps.'"   Id. ¶ 13.

21

Further, Burnley alleges that Brown informed Burnley about what the RPD was trying to do to arrest Burnley.   Id. ¶ 14.   Burnley also alleges that he spoke with Peter Magri, who he alleges worked at the "Verizon Corporate Security Office," about the wiretap and that Magri told Burnley that he would continue to place the "intrusive hard-wire tap [sic]" because the RPD had ordered those wiretaps to continue.   Id. ¶¶ 15-16.

Defendants Verizon and Keith Brown did not file motions to dismiss.   As a result, Burnley twice moved for judgment against both defendants.   See MOTION FOR JUDGMENT BY DEFAULT (ECF No. 34); MOTION FOR JUDGMENT BY DEMAND (ECF No. 37).   In his BRIEF IN SUPPORT OF MOTION FOR JUDGMENT BY DEMAND (ECF No. 38), Burnley argues that Verizon and Brown have defaulted because they failed to answer and because he served CT Corporation System, Verizon's registered agent.   But this motion is meritless because the service papers attached to Burnley's BRIEF IN SUPPORT OF MOTION FOR JUDGMENT BY DEMAND (ECF No. 38) clearly reflect that no service was made on either Verizon or Brown.   Those letters from CT Corporation System—Verizon's registered agent—state that "CT was unable to forward" the Complaint to Verizon because Burnley did not provide the full name of the entity, and CT could not forward the Complaint to Brown because it was "not the registered agent for an entity by the name of Keith Brown."   See Exhibit 1 (ECF No. 38-1); Exhibit 2 (ECF No. 38-2); Exhibit 3 (ECF No. 38-3).   Thus,

there is no basis for a default judgment when the parties were not on notice of a complaint that had been filed against them.

As for the merits of the claims against Verizon and Brown, the Court finds that Burnley's claims against Verizon and Brown fail under 28 U.S.C. § 1915(e)(2)(B). First, as with the other defendants discussed above, Burnley's claims against Verizon and Brown "describ[e] fantastic [and] delusional scenarios." Denton, 504 U.S. at 32 (quoting Neitzke, 490 U.S. at 327). He describes a situation in which Brown had a four-hour conversation with Burnley about how the RPD was trying to arrest him for some unknown reason and that Brown gave Burnley his personal cell phone numbers so that Brown could continue to tell him about the wiretap. He further says that Magri told him that the RPD had ordered the wiretaps and that Verizon has a full building for the entire purpose of wiretapping people like Burnley. Like with the above-discussed defendants and like in the other cases filed by Burnley that this Court has dismissed, this vast alleged conspiracy to monitor Burnley's action is unbelievable, fanciful, and delusional. Thus, his claims fail under 28 U.S.C. § 1915(e)(2)(B)(i).

Second, Burnley's claims fail under § 1915(e)(2)(B)(ii). The standard for dismissing a claim pursuant to § 1915(e)(2)(B)(ii) is the same as a dismissal under Fed. R. Civ. P. 12(b)(6), as both allow a court to dismiss a claim for failing to state claim upon

23

which relief can be granted. See Szubielski, 152 F. Supp. 3d at 231; see also Simms, 232 F.3d 889 (Table), at *1. Here, the Complaint does not fulfill the plausibility standard set out by the Supreme Court in Twombly and Iqbal. Given the most generous reading, the Complaint asserts no more than "a sheer possibility" that Verizon and Brown acted with the RPD and Chief Durham to monitor Burnley from a building in which Brown worked that "consisted of circuits of every imaginable type and highly sophisticated computers that are used by Verizon for the sole purpose of 'intrusive hard-wire taps.'" Compl. (ECF No. 4) ¶ 13. Burnley fails to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Thus, his claims against Verizon and Brown will be dismissed.

## F. The Civil Rights Act Of 1991 Claims

Burnley alleges that his lawsuit is being initiated under Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 171 (1991) (codified at 42 U.S.C. § 1981a); see Compl. (ECF No. 4) at p. 3. However, as Burnley has already been told by this Court, that statute addresses only employment discrimination. Burnley v. Norwood, No. 3:10-cv-264, 2010 WL 3063779, at *9. Because Burnley does not allege that he was even employed by any of the defendants, all claims under the Civil Rights Act of 1991 are improper.

24

Indeed, they are sanctionable. Thus, those claims will be dismissed against every defendant.

## G. Burnley Will Not Have Leave To Amend The Complaint

Finally, the Court will not give Burnley leave to amend his Complaint. As the Fourth Circuit has said, "[l]eave to amend need not be given when amendment would be futile." In re PEC Sols., Inc. Sec. Litig., 418 F.3d 379, 391 (4th Cir. 2005) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Here, Burnley has concocted a fanciful, delusional, conclusory story that is unsupported by any plausible factual allegations. Allowing amendment to the Complaint would prejudice the defendants by having them respond to baseless allegations. Thus, the Court will not give Burnley leave to amend his complaint, and dismissal of all claims will be with prejudice.

## CONCLUSION

For the foregoing reasons, DEFENDANTS ALFRED DURHAM, RICHMOND POLICE DEPARTMENT AND CITY OF RICHMOND'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF No. 11), DEFENDANT COMCAST CABLE COMMUNICATIONS, LLC'S MOTION TO DISMISS (ECF No. 15), and DEFENDANT DARSETTA COLEMAN'S MOTION TO DISMISS (ECF No. 22) will be granted with prejudice; Burnley's MOTION FOR JUDGMENT BY DEFAULT (ECF No. 34) and MOTION FOR JUDGMENT BY DEMAND (ECF No. 37) will be denied; the claims against Verizon and Brown will be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B); and the claims against

the Unknown Officers will be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) because Burnley fails to state a claim against the RPD or the City.

The Clerk is directed to send a copy of this Memorandum Opinion to the plaintiff.

It is so ORDERED.

_____/s/_____  *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August __6__, 2019